# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAKE CHARLES DIVISION

| | | |
|---|---|---|
| **KRISTI FONTENOT o/b/o the minor child, C.B.** | : | **DOCKET NO. 04-2326** |
| **VS.** | : | **JUDGE MINALDI** |
| **JO ANNE B. BARNHART, COMMISSIONER OF SOCIAL SECURITY** | : | **MAGISTRATE JUDGE WILSON** |

## REPORT AND RECOMMENDATION

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. This matter has been referred to the undersigned magistrate judge for a report and recommendation pursuant to 28 U.S.C. §636(b)(1)(B).

After review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. §405(g), the undersigned finds that the Commissioner's decision is not supported by substantial evidence. *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

## BACKGROUND

Kenny R. Broussard filed an application for Disability Insurance Benefits on August 22, 2002. (Tr. 46-49). He alleged an inability to work since March 6, 2002, due to a shoulder injury, high blood pressure, and a heart condition. (Tr. 47, 60). The claim was denied at the initial level of the administrative process. (Tr. 24-29). Thereafter, plaintiff requested, and received a March 2, 2004, hearing before an Administrative Law Judge ("ALJ"). (Tr. 274-310). In a May 25, 2004, written decision, the ALJ determined that Broussard was not disabled under the Act, finding at Step Five of the sequential evaluation process, that he could make an adjustment to

work which exists in significant numbers in the national economy. (Tr. 13-21). Broussard appealed the adverse decision to the Appeals Council. However, on September 17, 2004, the Appeals Council denied Broussard's request for review, and thus the ALJ's decision became the final decision of the Commissioner. (Tr. 5-7).

Plaintiff now seeks to have this court review the denial of benefits.[1] She alleges that:

(1) the Commissioner erred in finding that Broussard's back impairments did not satisfy section 1.04(A) of the Listings of Impairments; and

(2) the Commissioner's residual functional capacity is not supported by substantial evidence.

## STANDARD OF REVIEW

The court's review of the ultimate decision of the Commissioner is limited to determining whether the administrative decision is supported by substantial evidence and whether the decision is free of legal error. *Dellolio v. Heckler*, 705 F.2d 123 (5th Cir. 1993). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying the improper legal standards. *Singletary v. Brown*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. at 401.

When appearing before the ALJ, the plaintiff had the burden of proof to establish a

---

[1] After suit was filed, Broussard passed away. Accordingly, on March 15, 2005, Kristi Fontenot was substituted as plaintiff, as guardian of Broussard's surviving minor son, C.B. (*See*, March 15, 2005, Order).

2

medically determinable physical or mental impairment that prevented him from engaging in any substantial gainful activity for at least twelve consecutive months. 42 U.S.C. §§423(d)(1)(A) & 1381(a). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the decision. *Johnson v. Bowen,* 864 F.2d 340, 343-344 (5th Cir. 1988). The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Secretary. *Greenspan v. Shalala*, 38 F.3d 232, (5th Cir. 1994).

## LAW AND ANALYSIS

The secretary evaluates disability claims under the Social Security Act through a five-step process: (1) Is the claimant currently working and engaged in substantial gainful activity? (2) Can the impairment or combination of impairments be classified as severe? (3) Does the impairment(s) meet or equal a listed impairment in Appendix 1 of the Secretary's regulations? (If so, disability is automatic.) (4) Does the claimant's residual functional capacity permit him to perform past relevant work? and if not, (5) Can the claimant perform other work? 20 C.F.R. §§ 404.1520, 416.920. When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). The first four steps place the burden upon the claimant. At the fifth step, the burden shifts to the Secretary to establish that the claimant can perform other work. If the Secretary meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *See Falco v. Shalala*, 27 F.3d 160 (5th Cir. 1994); *Muse v. Sullivan*, 925 F.2d 785 (5th Cir. 1991).

### *Issue 1:*

The ALJ found at Step Two of the sequential evaluation process that Broussard suffered

from severe impairments consisting of ". . . chronic right shoulder, neck and right elbow pain, severe degenerative changes in the lower cervical spine at C5-6 disc level with posterior spondylosis and right posterior paracentral disc herniation causing spinal cord compression at the C5-C6 level and minimal degenerative changes of the lumbar spine and hypertension." (Tr. 17, 20). However, the impairments were not severe enough to meet or medically equal one of the impairments listed in the Category of Impairments in Appendix 1 to Subpart P, Social Security Regulations No. 4. *Id*.

Plaintiff contends that Broussard's back condition satisfies section 1.04(A) of the Listings of Impairments. That section provides

> 1.04 Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine);

20 C.F.R. Subpart P, App. 1, Section 1.04(A).[2] At Step Three, a claimant must provide medical findings that support *all* of the criteria for the equivalent impairment determination. *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990)(citing, *Sullivan v. Zebley*, 493 U.S. 521, 110 S.Ct. 885, 891 (1990)(emphasis added). Whether a claimant's impairment equals a listed impairment is based on medical evidence only. 20 C.F.R. § 404.1526. In support of her argument, plaintiff touts a March 8, 2004, Disorders of

---

[2] Since the ALJ's decision, section 1.05C has been amended and is now section 1.04. *See*, 20 C.F.R. Subpart P, App. 1, Section 1.04. However, the outcome remains the same.

4

the Spine Questionnaire completed by a treating orthopedic specialist, Dr. Warner. (Tr. 263-264). The completed questionnaire indicated that Broussard suffered from a herniated annulus, osteoarthritis, and degenerative disc disease. *Id*. The disorder resulted in nerve root compromise, and neuro-anatomic distribution of pain. *Id*. There was no limitation of motion of the spine. *Id*.[3] Dr. Warner indicated both that there was and was not motor loss accompanied by sensory or reflex loss. *Id*. He clarified that Broussard had a positive Hoffman's sign, but also had complaints of numbness. *Id*.[4] In other words, Broussard's reflexes were intact, but there was evidence of sensory loss.

Plaintiff has presented evidence that could support all of the requirements of section 1.04(A) of the Listings of Impairments. However, the ALJ did not address this evidence or discuss her reasons for her contrary finding.[5] Moreover, due to the ambiguity in Dr. Warner's questionnaire responses, the ALJ may be compelled to re-contact Dr. Warner. *See*, SSR 96-2p, 20 C.F.R. § 404.1512(e); and *Trahan v. Barnhart*, C. A. No. 02-1136 (W.D. La. 7/2/03)(citing, *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000)). This can be addressed on remand. *See*,

---

[3] However, plaintiff emphasizes that the record contains other evidence of limitation of motion in the spine. (*See e.g.*, Tr. 260).

[4] A positive Hoffmann's sign indicates *inter alia*, the presence of reflex activity.

[5] The record indicates that the questionnaire was received by the Office of Hearings and Appeals on April 1, 2004, – almost two months before the ALJ's decision. (*See*, Tr. 258). Even if this evidence had not been received prior to the ALJ's decision, it unquestionably comprised part of the record before the Appeals Council, and thus is before us on appeal. (Tr. 8); *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005). Moreover, because the March 8, 2004, questionnaire was premised on earlier medical records, there is no question that it was relevant to the period before the March 2, 2004, hearing. *See, Hammond v. Barnhart*, 132 Fed.Appx. 6, 2005 WL 1156097 (5th Cir. 5/17/05).

5

discussion, *infra*.

## *Issue 2*:

The ALJ next determined that Broussard retained the residual functional capacity for sedentary work, reduced by the inability to lift more than five pounds with the right upper extremity, and with the need to avoid overhead work using the right upper extremity. (Tr. 18, 20).[6] Plaintiff complains that the ALJ's residual functional capacity assessment is not supported by substantial evidence. We agree.

The only physician of record to address Broussard's *limitations* during the relevant period was James Taylor, M.D., at the request of Disability Determination Services. (Tr. 116-119).[7] Taylor diagnosed status post right shoulder dislocation and surgery, and poorly controlled hypertension. *Id*. Taylor opined that Broussard's ability to sit, stand, walk, hear, speak, or handle objects remained unimpaired. *Id*. He further stated that Broussard was unable to lift with the right upper extremity anything greater than five pounds, and was not able to work overhead. *Id*.

Nevertheless, it cannot be overlooked that Dr. Taylor examined Broussard in January

---

[6] Sedentary work entails:
> . . . lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. 404.1567(a).

[7] A Physical Residual Functional Capacity Form was completed by a state agency examiner on January 28, 2003. (Tr. 121-128). However, the examiner was not a physician. (Tr. 128, 17, 24).

2003 – over one year before the March 2, 2004, hearing. *Id.* By the time of the hearing, objective testing confirmed that Broussard was suffering from additional impairments of severe degenerative changes in the lower cervical spine at the C5-6 disc level, with posterior spondylosis and right posterior paracentral disc herniation causing spinal cord compression at the C5-C6 level and minimal degenerative changes of the lumbar spine. (*See generally*, Tr. 255-256, 259-270).[8] Thus, Dr. Taylor's assessment did not encompass all of plaintiff's impairments. Instead, the ALJ seems to have autonomously assessed the cumulative effects of plaintiff's myriad impairments. Yet, in the absence of any supportive evaluation by a medical source (or other compelling record evidence), we are constrained to find that the ALJ's residual functional capacity assessment is not supported by substantial evidence. *See, Butler v. Barnhart*, Case Number 03-31052 (5th Cir. 06/02/2004)(unpublished)(In the absence of a medical opinion or evidence establishing that the claimant could perform the exertional demands of light work, the ALJ's determination is not supported by substantial evidence).[9]

Because the foundation for the ALJ's Step Five determination was premised upon a residual functional capacity which is not supported by substantial evidence, we necessarily find that the ALJ's ultimate conclusion that plaintiff is not disabled is also not supported by

---

[8] Of course, Broussard's impairments need not have lasted 12 months at the time of the decision, provided that they were *expected* to last for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A).

[9] Unpublished Fifth Circuit opinions issued on, or after January 1, 1996, are ordinarily not precedent. FRAP 47.5.4. However, they are persuasive. *Id.* Moreover, the fact that a case remains unpublished reflects the panel's belief that the decision simply reaffirmed a well-settled principle of law. *See*, FRAP 47.5.1.

substantial evidence.[10]

For the foregoing reasons,

IT IS RECOMMENDED that this matter be REVERSED and REMANDED to the Commissioner for further proceedings consistent with this opinion.

Under the provisions of 28 U.S.C. §636(b)(1)(C), the parties have ten (10) business days from receipt of this Report and Recommendation to file any objections with the Clerk of Court. Timely objections will be considered by the district judge prior to a final ruling.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING ON APPEAL, EXCEPT UPON GROUNDS OF PLAIN ERROR, THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT.**

THUS DONE AND SIGNED in Chambers at Lake Charles, Louisiana, this 23rd day of August, 2005.

*[signature]*
ALONZO P. WILSON
UNITED STATES MAGISTRATE JUDGE

---

[10] If Broussard had exertional and non-exertional limitations which created a residual functional capacity for less than sedentary work, then the vocational expert opined that there would be no jobs that he could perform in the economy. (Tr. 309).